UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-248-GWU

JUANITA RUTH WELLS,               PLAINTIFF,

VS.          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

07-248  Juanita Ruth Wells

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-248  Juanita Ruth Wells

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Juanita Ruth Wells, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease, mild arthritis of the hands, hypothyroidism, chronic pain disorder with a history of fibromyalgia, and residuals of varicose vein and rectocele surgeries. (Tr. 23). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Wells retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 25-8). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "sedentary" level exertion, with the requirement of a sit/stand option, and also had the following non-exertional limitations. (Tr. 768-9). She: (1) could never

climb ladders, ropes, or scaffolds; (2) could occasionally climb, stoop, bend, and crawl; (3) had to avoid unprotected heights or dangerous equipment; (4) could perform no more than frequent handling or fingering with either hand; and (5) would be limited to work involving no more than simple instructions. (Tr. 769-70). The VE was able to identify only two jobs in response to the question, with a total of 1,000 jobs in the state and 145,000 nationally. (Tr. 770).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

Mrs. Wells alleged disability due to a wide range of problems including arthritis, high blood pressure, and asthma. (Tr. 100).[1] At the administrative hearing, she described a wide variety of additional problems, including diabetes, blurred vision, migraine headaches, urinary frequency following two bladder surgeries, and fibromyalgia. (Tr. 725, 734-5, 736, 741, 751-3, 756). Although she was a resident of Corbin, she was seeing a doctor in Atlanta to receive pain medication for her fibromyalgia; these medications included Oxycontin, MSContin, and Lortab. (Tr.

---

[1] The plaintiff had filed a previous application for benefits which was denied by another ALJ in a decision dated June 24, 2004. (Tr. 40-53). She chose this date as her alleged onset date in her current application. (Tr. 101). The ALJ in the present case declined to reopen the prior application, but held that there had been evidence of changed circumstances warranting a departure from the prior findings regarding the plaintiff's residual functional capacity. (Tr. 18-19).

07-248 Juanita Ruth Wells

732-4). Her local physician, Dr. Jackie Maxie, prescribed other medication including for diabetes. (Tr. 735).

Although the plaintiff's allegations focused on her physical problems, she underwent a consultative psychological evaluation in October, 2005 by Dr. Crystal Sahner. She described difficulty dealing with chronic pain and had been recently evaluated for a sleep disorder. (Tr. 309). She described having problems with stress and worry, and was taking Valium, in part, to help her relax at night. (Tr. 310). At times she would become irritable and had some difficulty with forgetfulness. (Id.). Her social activities were "almost non-existent," although she was responsible for two children who were disabled. (Tr. 311). On testing, she displayed some difficulty with delayed recall and had a somewhat impoverished fund of information. (Tr. 312). Her level of intellectual functioning was estimated to be within an average range, and her ability to make simple decisions appeared to be adequate, but the psychologist felt that she would likely require guidance and support if the decision was one that would cause a considerable degree of stress or anxiety. (Tr. 313). Dr. Sahner diagnosed an anxiety disorder, with a current Global Assessment of Functioning (GAF) score of 53 to 55. (Id.). A GAF score in this range reflects moderate symptoms or moderate difficulty with social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. Dr. Sahner's conclusions regarding

07-248  Juanita Ruth Wells

functional capacity were that anxiety would have a moderate effect on her ability to understand, remember, and carry out simple, repetitive tasks, to interact with fellow workers and supervisors, and to sustain attention and concentration toward the performance of simple, repetitive tasks.  (Tr. 314).  The anxiety would have a "marked" effect on her ability to tolerate the stress and pressure of day-to-day employment.  (Id.).

No examining or treating source gave a contrary opinion.  Dr. Sahner's report was reviewed by a non-examining state agency psychologist, Dr. Ann Demaree, who touched on Dr. Sahner's restrictions but simply stated that her opinion was given "minimal weight."  (Tr. 511).  No clear reason was given for rejecting Dr. Sahner's conclusion.  Dr. Demaree herself indicated that the plaintiff had a "severe" anxiety-related disorder (Tr. 495) and completed a mental residual functional capacity assessment stating that the plaintiff would have a "moderately limited" ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and a "moderately limited" ability to respond appropriately to changes in the work setting.  (Tr. 509-10).  In the "elaborations on preceding capacities" portion of the form, Dr. Demaree stated that it appeared the plaintiff could understand and complete simple to complex tasks, relate adequately to peers and supervisors, and adapt in a work setting within her physical limitations.  (Tr. 511).

07-248  Juanita Ruth Wells

The ALJ concluded that there was no evidence of a mental impairment that would impose a significant limitation, but he did not mention Dr. Sahner's specific limitations, including her opinion that the plaintiff's ability to deal with work-related stress was markedly limited (Tr. 23), or Dr. Demaree's opinion that the plaintiff has a "severe" impairment (Tr. 495).  Since Dr. Sahner's opinion is uncontradicted in view of the state agency reviewer's failure to clearly explain her difference of opinion with the examiner, see Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994), a remand will be required for further consideration of this issue.

Additionally, the plaintiff raises the issue of her treating physician in Atlanta, Dr. John Gatell, a specialist in pain relief.  Dr. Gatell began treating Mrs. Wells in November, 2004 for severe generalized pains, and he initially assessed fibromyalgia as well as rheumatoid arthritis, generalized pain syndrome and anxiety and depression.  (Tr. 386-9).  Later on, he noted that the rheumatoid arthritis was "probably . . . on a subclinical level." (Tr. 382).  However, he wrote letters indicating that Mrs. Wells had progressive fibromyalgia and chronic fatigue syndrome which limited her ability to function in daily activities and precluded any work.  (Tr. 377-8, 380).  She would have restrictions on bending, twisting, pushing, pulling, climbing, kneeling, overhead reaching, standing, walking, and extended sitting. (Tr. 378). He concluded that she was "disabled."  (Id.).

07-248 Juanita Ruth Wells

The ALJ rejected Dr. Gatell's opinion because he provided only a general discussion of fibromyalgia, provided non-specific restrictions, and did not report actual positive trigger points. (Tr. 23). The court notes, however, that some of Dr. Gatell's office notes seem to refer to a "graph" which is not contained in the transcript in describing his musculoskeletal findings. (Tr. 389). The findings were said to be consistent with fibromyalgia syndrome. (Id.). Moreover, in a medical report dated April 6, 2005, Dr. Gatell <u>does</u> state that the plaintiff had 11 of 18 possible tender points consistent with fibromyalgia. (Tr. 385). Therefore, although the court recognizes that there are deficiencies in the physician's opinion for the purposes of establishing a Social Security disability claim, the ALJ's discussion does not provide an adequate explanation for its rejection. <u>See</u> <u>Rogers v. Commissioner of Social Security</u>, 486 F.3d 234 (6th Cir. 2007); <u>Wilson v. Commissioner of Social Security</u>, 378 F.3d 541 (6th Cir. 2004).

The plaintiff additionally argues on appeal that the ALJ improperly rejected her allegations of disabling pain and made an improper credibility analysis. She notes that apparently none of the plaintiff's physicians questioned the validity of her pain complaints, and her daily activities were extremely limited. The ALJ cited several reasons for discounting the plaintiff's credibility, some of which appear to be dubious. For instance, the ALJ cited the plaintiff's reference to an "ex-husband," although it appeared that they were only separated and not divorced. (Tr. 24, 726,

07-248  Juanita Ruth Wells

729).  This would seem to be a fairly common figure of speech.  The ALJ questioned the credibility of the plaintiff's allegations because her alleged onset date bore no relationship to the medical evidence of record and was merely chosen because it was the date of the previous administrative decision.  (Tr. 24).  The court notes, however, that this is an almost universal practice in SSI claims where there has been a prior final decision.  Furthermore, the ALJ correctly noted that a physician who evaluated the plaintiff's alleged sleep disorder had concluded that large doses of narcotic medication and Valium were likely contributing to her daytime sleepiness and possible cognitive impairment, and the medication usage was directly related to her ability to concentrate and provide answers to questions.  (Tr. 24, 682).  While this reasoning is both plausible and supported by a medical opinion, it would appear to leave the plaintiff in a difficult position assuming that the medication was medically necessary for pain control.  While her cognition might improve without the sedating effect of the drugs, her ability to concentrate would presumably be affected by increased levels of pain.

    The decision will be remanded for further consideration.

    This the 23rd day of April, 2008.



**Signed By:**
**G. Wix Unthank**
**United States Senior Judge**

13